## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | |
| | **:** | |
| **v.** | **:** | **CRIMINAL NO.  06-366 (RWR)** |
| | **:** | |
| **REGINALD BIZZELL,** | **:** | |
| **RODRIQUEZ SEEGERS,** | **:** | |
| **Defendants.** | **:** | |
| _____ | **:** | |

### UNITED STATES' MOTION TO ADMIT OTHER CRIMES
### EVIDENCE PURSUANT TO FEDERAL RULE OF EVIDENCE 404(b)

The United States, by and through its attorney, the United States Attorney for the District of Columbia, respectfully moves this Court to permit the introduction of other crimes evidence pursuant to Federal Rule of Evidence 404(b) ("Rule 404(b)").  Specifically, the government seeks to admit defendant Bizzell's possession of a Savage 20 Gauge shotgun model 20L-E (sawed off shotgun) obtained from his bedroom closet during the execution of a search warrant to show his knowledge of, and intent to possess the 9mm Ministorm semi-automatic handgun (handgun) in this case.  In support of its motion, the United States relies on the following points and authorities, and such other points and authorities as may be cited at a hearing on this matter:

### Factual Summary

1.      On December 19, 2006, both defendants each were indicted in different counts of the same indictment for Unlawful Possession of a Firearm by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year, in violation of Title18, United States Code, Section 922(g)(1).  This motion relates only to defendant Bizzell.

2.     At a hearing or trial in this matter, government counsel expects the evidence to demonstrate substantially as follows:  On November 22, 2006 at about 2:50 a.m. United States Park Police (USPP) Joseph Belino monitored a PG County radio broadcast for shots fired at a night club in the county.  Shortly thereafter, Bellino saw a white Buick Regal heading onto the Suitland Parkway at a high rate of speed  with no headlights.  The officer turned on his emergency equipment and pursued the Buick.  The Buick continued to flee at a high rate of speed until the driver lost control and crashed into a tree.  The defendant Seegers got out of the driver's seat and reached toward his waistband as he ran from the Buick.   United States Park Police Bellino chased Seegers and heard the sound of a metal object hitting the sidewalk.  Seegers was stopped about two blocks away and a .380 cal semi-automatic pistol was recovered on the ground in front of the Buick where Bellino heard something hit the ground.

While Bellino chased defendant Seegers, Metropolitan Police Department (MPD) Sgt. Richard Harger responded to Bellino's radio broadcast and drove down 6th Street.  Harger saw defendant Bizzell getting out of the front passenger seat of the Buick but continued to drive down the street to locate Bellino not realizing that Bizzell was one of the suspects.  USPP Jason Omo also arrived at 6th Street to assist Bellino.  As Omo drove slowly past the Buick he saw Bizzell standing in the rear of the vehicle on the driver's side next to the rear wheel and continued driving towards Bellino.  Omo slowed down to stop at the Buick and Bizzell pointed down the street toward Galveston.  Not knowing who Bizzell was at the time, Omo continued down the street and met up with Sgt Harger.  By this point, Harger learned who the suspects were and pointed back toward the Buick and told Omo to get that guy [Bizzell].  When Omo turned around Bizzell was no longer in the area.

Seegers was placed under arrest and the officers searched the Buick.  Six 9mm shell casings were recovered from the Buick - - three shell casings on the driver's side floor board and three shell casings under the driver's seat.  Mail matter and repair bills in Seegers name were found in the map pocket on the driver's seat and a wallet that contained Bizzell's driver's license and identification was recovered from the front passenger side floor board.  While the officers were processing the Buick they saw Bizzell strolling down Southern Avenue.  The officers stopped Bizzell and placed him in handcuffs.  The officers searched Bizzell and recovered a cell phone from his pocket and a card advertising the Trade Winds Night Club.  A tow truck was brought to the scene to tow the Buick to the police impound lot.  When the tow truck pulled the Buick back from the tree that Seegers had crashed into the officers saw a second gun - - a minstorm 9mm pistol - - lying on the ground where Bizzell was standing.[1]

Bizzell and Seegers were transported to the station and placed in separate cells.  While the defendants were waiting to be processed the officers overheard defendants talking to each other.  Officer Bellino recorded the following conversation in his notebook as the defendants spoke with each other:

| | |
|---|---|
| Seegers: | Yo Homie. |
| Bizzell: | Yeh. |
| Seegers: | Both. They got both. |
| Bizzell: | Yeh. I know. I already chalked that one up. |
| Seegers: | Both. |
| Bizzell: | Yeh. Man, I was in the house. |
| Seegers: | Both. |

---

[1] The pistol had one spent shell casing in the chamber and two live rounds in the magazine. All of the ammunition in the pistol had the brand name of "WIN".
  One of the 9mm shell casings that had been recovered from inside the Buick had the brand name of "WIN" and the other five shell casings that had been recovered in the Buick had the brand name "FC".

| | |
|---|---|
| Bizzell: | Yeah. I left that one on the car.  I got rid of it before I went in the house. |
| Seegers: | We are done. |
| Bizzell: | Did they do that gun powder shit on you too? |
| Seegers: | Yea.  Damn we are done. We are through. |
| Bizzell: | Yea, I know. |

On November 28, 2006 (six days after the incident), a search warrant was obtained and executed at defendant Bizzell's residence.[2]   No one was present when the search warrant was executed at Bizzell's residence.  There was one bedroom in the residence.  Bizzell's mail matter, photographs, and personal belongings were in certain drawers of dressers within the bedroom and on one side of a shared closet inside of the bedroom.  The other side of the closet contained female items.  On Bizzell's side of the closet, MPD officers found a Savage 20 gauge shotgun model 220L-E 20 serial #P306936 wrapped in a purple Bucks basketball jersey similar to one Bizzell wore in displayed photographs throughout the apartment.[3]  It is this sawed off shotgun that the government seeks to introduce at the trial for the purpose of showing Bizzell's knowledge of, and intent to constructively possess the firearm that was found on the ground in the location where Officer Omo saw Bizzell standing on Omo's arrival at the scene of the incident, on November 22, 2006.

<u>**Argument**</u>

3.     The government seeks to introduce the shotgun found by officers at Bizell's home during execution of a search warrant as proof in this case that Bizzell's constructive possession of the firearm found on the ground at the rear of the vehicle as it was being towed away on

---

[2]/ 300 Livingston Terrace, SE, Washington, D.C.

[3]/ DNA samples were taken from the shot gun and sent to FBI for analysis.  An expedited analysis was requested.

November 22, 2006, was done knowingly and intentionally, and was not the result of

inadvertence or mistake or accident, pursuant to Rule 404(b).  The government contends that the

shotgun is probative of Bizzell's criminal intent and state of mind.

     4.     Rule 404(b) provides that evidence of "other crimes, wrongs, or acts" is not

admissible to prove a defendant's character, but is admissible for any non-propensity purpose,

including motive, intent, plan, knowledge, and absence of mistake.  See United States v. Bowie,

232 F.3d 923, 926, 930 (D.C. Cir. 2000).  Importantly, this rule is one of "inclusion rather than

exclusion."  Id. at 929.   As the Court of Appeals has noted en banc, while the first sentence of

the rule is framed restrictively, the rule is actually quite permissive, prohibiting the admission of

other crimes evidence in but one circumstance – for the purpose of proving that a person's

actions conformed to his character.  United States v. Crowder, 141 F.3d 1202, 1206 (D.C. Cir.

1998) (en banc) (Crowder II).  In short, Rule 404(b) bars "not evidence as such, but a theory of

admissibility."  Id. at 1202.  As the Court stated in United States v. Cassell, 292 F.3d 788, 795

(D.C. Cir. 2002), "[t]rue, the evidence may tend to show that [defendant] is a person of bad

character, but Rule 404(b) does not thereby render it inadmissible.  To reiterate what we have

stated before . . . under Rule 404(b), 'any purpose for which bad acts evidence is introduced is a

proper purpose so long as the evidence is not offered solely to prove character.'"  (citing United

States v. Miller, 895 F.2d 1431, 1436 (D.C. Cir. 1990)) (emphasis in original).

     5.     Such evidence is of course subject like all evidence to the strictures of Rule 403.

Thus, the admissibility of other crimes evidence rests on a two-step inquiry: 1) whether the other

crimes evidence is relevant to an issue other than the defendant's character or propensity, and if

so, 2) whether the evidence is admissible under Rule 403 because its probative value is not

substantially outweighed by the danger of unfair prejudice.  United States v. Moore, 732 F.2d

983, 987 (D.C. Cir. 1984).

6.      As its language reflects, Rule 403 "tilts, as do the rules as a whole, toward the

admission of evidence in close cases" -- even when other crimes evidence is involved.  Moore,

732 F.2d at 989.  See Huddleston v. United States,  485 U.S. 681, 688-89 (1988) ("Congress was

not nearly so concerned with the potential prejudicial effect of Rule 404(b) evidence as it was

with ensuring that restrictions would not be placed on the admission of such evidence").[4]  The

Court of Appeals acknowledged that evidence of prior gun possessions may be prejudicial in a

subsequent trial for gun possession, while noting that, this does not suggest that such evidence

has an automatic unfair and substantial prejudicial effect on the jury.  Unfair prejudice as used in

Rule 403 is not be equated with evidence that is simply adverse to the opposing party.  Virtually

all evidence is prejudicial or it isn't material.  A jury instruction that it is only to consider the

evidence for the limited and proper purposes of *modus operandi*, specific intent, knowledge, and

absence of mistake or accident is sufficient to protect a defendant's interest in being free from

undue prejudice.  United States v. Cassell, 292 F.3d at 795 (*quoting*, U.S. v. Perholtz, 842 F.2d

343, 361 (D.C. Cir, cert. denied, 488 U.S. 821, 109 S.Ct. 65 (1988)).

---

[4] As for the burden that must be met in presenting other crimes evidence, the Court is not
required to make any sort of preliminary finding or to weigh the evidence as to the other crimes.
Indeed, as the Supreme Court has emphasized, "[i]n determining whether the Government has
introduced sufficient evidence to meet Rule 404(b), the trial court neither weighs credibility nor
makes a finding that the Government has proved the conditional fact by a preponderance of the
evidence." Huddleston, 485 U.S. 690 (emphasis added).  Instead, the trial court "simply
examines all the evidence in the case and decides whether the jury could reasonably find the
conditional fact [other crimes evidence] . . . by a preponderance of the evidence."  Id. at 690.
And in doing so, the trial court must consider all the pieces of evidence presented to the jury,
both as to the other crimes evidence and the charged conduct.  Ibid.

9.      In the instant case, the government must prove that the defendant knowingly and intentionally possessed the black 9mm Ministorm semi automatic handgun, the spent shell casing "WIN 9mm Luger" magazine and the round of "WIN 9mm Luger ammunition that was within the chamber and the magazine, respectively.  This means consciously, voluntarily, and on purpose, not mistakenly, accidentally, or inadvertently."  See Criminal Jury Instructions (the "Red Book"), Instruction 4.28.  The jury will be instructed that "[m]ere presence near something or mere knowledge of its location is not enough to show possession."  Red Book, Instruction 3.08.  Therefore, the government's burden of proving intentional possession is substantial.

10.     "As the Supreme Court has noted, 404(b) evidence may be critical to the establishment of the truth as to a disputed issue, especially when that issue involves the actor's state of mind and the only means of ascertaining that mental state is by drawing inferences from conduct."  United States v. Clarke, 24 F.3d 257, 265 (D.C. Cir. 1994) (citing Huddleston, 485 U.S. at 685) (emphasis added in Clarke).  Indeed, the Rule 404(b) evidence the government seeks to admit at trial, i.e., prior possession to prove knowledge, intent, and absence of mistake regarding current possession, is precisely the same sort of other crimes evidence for which admission at trial has been upheld in the past.  For example, in U.S. v. Cassell, id. other crimes evidence was admitted to show the defendant's knowledge, intent, and motive.  The Court in Cassell stated:

> The contested evidence's probative value was high as it was
> relevant to an issue other than Cassell's character: it concerned
> Cassell's knowledge and intent with respect to the firearms
> recovered from his bedroom.  The government was required to
> prove that Cassell knowingly possessed the firearms found in is
> room.  The fact that Cassell had previously possessed weapons
> tends to make it less probable that the weapons recovered from his

bedroom were there without his knowledge, without intent, or by accident or mistake. 292 F.3d at 795.

The government seeks to do nothing more in the instant case – i.e., to show the defendant's intent, knowledge, motive, plan, opportunity and absence of mistake with gun he constructively possessed. Id.

11.    All of the "other crimes" evidence described above is highly probative of the defendant's knowing and intentional possession of the gun and ammunition in this case. Moreover, this evidence is also probative in showing that the defendant's possession of the gun and ammunition were not the result of mistake or accident.  The significant probative value of the evidence here is clearly not outweighed by the danger of unfair prejudice in this case. Whatever prejudice the defendant may perceive, moreover, can adequately be addressed through the use of a limiting instruction to the jury.

12.    Numerous cases in this Circuit demonstrate that evidence of a prior or subsequent possession firearms is admissible as 404(b) evidence.  See, Cassell, 292 F.3d at 793 ("We have previously held that 'in cases where a defendant is charged with unlawful possession of something, evidence that he possessed the same or similar things at other times is often quite relevant to his knowledge and intent with regard to the crime charged'") (citation omitted).  In United States v. Garner, 396 F.3d 438, 443 (D.C. Cir. 2005), the Court of Appeals reiterated that the admission of Rule 404(b) evidence is appropriate where the charged offense is based on a theory of constructive possession, particularly, as in this case, "where the contraband is discovered in a place occupied by more than one person."  (citing United States v. Jenkins, 981 F.2d 1283 (D.C. Cir. 1991)).  The facts of Garner are worth some discussion.  There the officers

stopped a vehicle occupied by two individuals.  The officers approached the car and ordered its
occupants to raise their hands.  The driver complied but Garner, the passenger, did not; rather, he
sat staring straight ahead and smoking a cigarette, while he kept his left hand in his waistband.
Id. at 439.  At one point, Garner was observed by one officer removing a large handgun from his
waistband and placing it under the passenger seat.  Both defendants were removed from the
vehicle and the car was subsequently searched.  Underneath the front passenger seat police found
a semi-automatic handgun.  Id.  On the gun were found three latent fingerprints, only one of
which was useful, and it was matched to the driver's fingerprint.  Id. at 439-440.
Notwithstanding, Garner, among other charges, was charged as a felon-in-possession of a
firearm.  Proceeding with the theory that a jury could have concluded that Garner constructively
possessed the gun recovered under his seat, the government introduced evidence that Garner
previously was found in the front passenger seat of a car with a handgun under his seat and a
matching ammunition clip in his jacket.  Id. at 444.  In upholding the introduction of evidence
concerning Garner's prior conviction for carrying a pistol without a license, the Court of Appeals
reasoned that the testimony "made it more likely that Garner was in knowing possession of the
loaded gun found beneath his seat[,] just as in Crowder II[,] evidence that the appellant had
previously sold cocaine base made it more probable that he knowingly possessed and intended to
distribute the cocaine base found in the brown paper bag he discarded while running from police
officers."  Id., at 444 (citations omitted).  See also, Cassell, 292 F.3d at 796 (the fact that
defendant previously possessed weapons "tends to make it less probable that the weapons
recovered from his bedroom were there without his knowledge, without intent, or by accident or
mistake") (citing United States v. Brown, 16 F.3d 423, 432 (D.C. Cir.)), cert. denied, 513 U.S.

900 (1994); <u>Bowie</u>, 232 F.3d at 930 (evidence that defendant "possessed and passed counterfeit notes on a prior occasion" relevant because "it decreased the likelihood that [he] accidentally or innocently possessed the counterfeit notes").  <u>United States v. Toms</u>, 136 F.3d 176, 183-84 & nn. 11-12 (D.C. Cir. 1998) (in constructive possession case, evidence of prior drug activities and firearm possession was admissible to show intent, motive, knowledge, and/or absence of mistake with respect to the instant firearm);  <u>United States v. Latney</u>, 108 F.3d 1446, 1448 (D.C. Cir.) (evidence of defendant's other possession of crack admissible in trial charging aiding and abetting distribution of crack), <u>cert</u>. <u>denied</u>, 522 U.S. 940 (1997); <u>Clarke</u>, 24 F.3d at 264 (evidence of prior sales of cocaine by defendants admissible to establish intent regarding their possession of large amounts of cocaine on dates charged in the indictment); <u>United States v. Washington</u>, 969 F.2d 1073, 1080-81 (D.C. Cir. 1992) (when defendant charged with distribution and possession with intent to distribute drugs, 404(b) evidence of his prior drug transactions was admissible to demonstrate intent, knowledge, plan and absence of mistake), <u>cert. denied</u>, 507 U.S. 922 (1993); <u>United States v. Harrison</u>, 679 F.2d 942, 948 (D.C. Cir. 1982) (evidence of defendant's prior drug trafficking admissible in trial of charges of possession with intent to distribute drugs to show intent, preparation, plan and knowledge); and <u>United States v. Johnson</u>, 40 F.3d 436, 441 n.3 (D.C. Cir. 1994) (proper to admit evidence of a prior drug transaction as bearing on intent to possess), <u>cert. denied</u>, 514 U.S. 1041 (1995).

14.    Likewise, in the instant case, the gun was found on the ground in the location where Bizzell was seen standing when officer Omo arrived on the scene.  Not knowing who Bizzell was at the time of his arrival, officer Omo continued driving in the direction Bizzell pointed to assist officer Bellino arrest Seegers.  After learning Bizzell was one of the suspects,

then was he placed under arrest.  After his arrest and the towing of the vehicle did officers discover the 9mm gun in the location where defendant Bizzell was standing.  Bizzell was not seen in actual possession, physical possession of that gun.  Evidence of Bizzell's prior or subsequent gun possession should be admitted, therefore, to prove that the defendant's construction possession was knowing and intentional, and not simply the product of any mistake or accident.  See Cassell, 292 F.3d at 795.  Because the proffered evidence of a previous crime/act bears such a close relationship to the offenses charged here, its admission will clearly demonstrate, among other things, the defendant's specific motive, knowledge, and intent, and the absence of mistake or accident.

WHEREFORE, for the reasons stated above, the United States respectfully submits that the government's motion to admit other crimes evidence pursuant to Federal Rule of Evidence 404(b) should be granted.

Respectfully submitted,

JEFFREY A. TAYLOR
United States Attorney
Bar No. 498610

By:    _____
Angela Hart-Edwards
Assistant United States Attorney
PA Bar #61468
U.S. Attorney's Office
555 4th Street, N.W., Rm. 44241
Washington, D.C. 20530
(202) 307-0031

11

## <u>Certificate of Service</u>

I hereby certify that a copy of the United States' Motion to Admit Other Crimes Evidence Pursuant to Federal Rule of Evidence 404(b), was served by first class mail upon counsel of record for defendants this 22nd day of January, 2007.


_____
Angela Hart-Edwards
Assistant United States Attorney